UNITED STATES *v.* A. ACKERMANN & SONS (No. 3702)[1]

United States Court of Customs and Patent Appeals, December 30, 1933

*Charles D. Lawrence,* Assistant Attorney General (*Reuben Wilson* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*David D. Stansbury* for appellee.

---

[1] T. D. 46852.

[Oral argument October 6, 1933, by Mr. Folks; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court sustaining appellee's protest against the dutiable classification of certain articles, hereinafter more particularly described, imported under the Tariff Act of 1922, and classified by the Collector of Customs at the port of Chicago, Ill., under paragraphs 211 and 212 of the Tariff Act of 1922, the pertinent portions of which read:

PAR. 211. Earthenware * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 50 per centum ad valorem.

PAR. 212. China, porcelain * * * painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, 55 per centum ad valorem.

No brief was filed, nor any oral argument presented, on behalf of appellee in this court.

The case was twice heard by the Customs Court, an application for rehearing made by the Government, after its first decision, having been granted. At the second hearing no additional testimony was presented, Government counsel stating that reconsideration was sought "mainly on a question of law."

The articles here involved comprise three items out of an apparently large importation. These three are designated in the decisions of the Customs Court as "pottery figures" and they are described in the Government's brief as follows:

Pottery Witch and Broom, item S. 3430.
Pottery Lady in Crinoline, item S. 3431.
Pottery Saturday Night, item S. 3512.

No physical exhibits are on file.

In the report of the Collector of Customs transmitting the case to the Customs Court it is stated:

The merchandise consists of decorated earthenware assessed for duty at 50% ad valorem under par. 211, act of 1922, and decorated bone china figures and vases assessed for duty at 55% ad valorem under par. 212, act of 1922.

The claim of the protest, as it appears in the record, is not entirely clear. The protest seems to have been leveled not only at the classification of the three items now involved, but at the classification of a number of other items, and the claiming portion reads:

We claim that these goods are dutiable under the provisions of paragraph 1449 and 1704 of the Tariff Act of 1922, as reproductions of works of art, as to—
Pottery Witch & Broom, item S. 3430.
Pottery Lady in Crinoline, item S. 3431.

Pottery Saturday Night, item S. 3512 and original work of art, as to six pottery group, item S. 3368.

Pottery figure of girl.

Pair Crown Derby Bouquets.

Pair Crown Derby baskets.    (Italics ours.)

Paragraph 1704 of the Tariff Act of 1922 makes no provision for "reproductions of 'works of art'," expressed in those terms, but does provide for "original sculptures or statuary, including not more than two replicas or reproductions of the same," and declares what the terms "sculpture" and "statuary" shall include. The phrase "works of art" does not appear in the paragraph, but does appear in paragraph 1449 of the said act, the full text of which paragraph reads:

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

The United States Customs Court seems to have interpreted the protest claim, insofar as it relates to the three items here involved, as claiming alternatively under paragraphs 1704 and 1449, and it held expressly that the items are excluded from the former, among other reasons, "because of the materials of which they are composed." Since there has been no appeal by the importer from this holding, it is not necessary that we here give further consideration to paragraph 1704. It rather seems to us that the claim as to these three items was, in fact, limited to paragraph 1449 in the protest, *supra*, but, however this may be, paragraph 1704 is no longer involved, and the sole question before us is the applicability of paragraph 1449, *supra*.

Considering the issue as thus limited, it is noted that the claim of the protest is a rather general one, viz, "as reproductions of works of art." The protest does not specify, nor designate, any article or class of articles, such, for example, as "statuary" (the only class which, judging from the nature of the articles, would seem proper of application), of which they are claimed to be reproductions.

Only one witness was called in the case, he being the assistant manager of the importing firm. It was pointed out by the trial court that the witness—

admitted on cross-examination that he did not see any of the articles now in suit while they were in the process of production and that he has no personal knowledge as to whether they are reproductions or originals.

The court then referred to other testimony of the witness and continued:

While we do not consider his testimony satisfactory for the purpose of proving the originality of the figures, still, in view of the fact that the witness has been recognized as an art critic in Chicago for 14 years, his opinion that the articles, * * * are works of art, is entitled to considerable weight.

Since the claim of the protest under paragraph 1449, *supra*, is limited to *"reproductions* of works of art" (italics ours), and since the trial court apparently held "originality" not satisfactorily established by the testimony, we take it that the decision below means that that court held the articles not to be originals, but to be reproductions, and that such reproductions are, in themselves, works of art, independent of any question of originality.

It seems to us that in so holding, the trial court failed to consider the fact that there was a failure of proof not only as to "originality" but as to the articles being "reproductions" of works of art.

In order to fall within paragraph 1449, *supra*, the articles must be shown to be either originals, or reproductions of originals (the claim of the protest being limited to "reproductions") or, to state it differently, they must be shown to be either original "works of art" or "reproductions of works of art." *Cassard Romano Co., David A. Haagena*, v. *United States*, 19 C.C.P.A. (Customs) 191, T.D. 45294; *O. O. Friedlaender Co.* v. *United States*, 19 C.C.P.A. (Customs) 198, T.D. 45295.

The witness was unable to identify them as being either originals or reproductions of originals. In view of the failure of proof upon this material question, we are of the opinion that the trial court reached the wrong conclusion in the case.

Unless there were proof of what the articles actually are with reference to paragraph 1449, *supra*, we cannot agree that the mere general expression of opinion on the part of the witness, however great his qualifications, that they are works of art, should be taken as sufficient to overcome the presumption of correctness attaching to the collector's classification.

The judgment of the United States Customs Court as to the three items above specified is *reversed*.